UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
**AEGIS SECURITY INSURANCE**              )
**COMPANY,**                              )         **CIVIL ACTION**
                                          )
          **Plaintiff,**              )         **NO. 17-40068-TSH**
                                          )
          v.                          )
                                          )
**M.E. SMITH, INC. MARK E. SMITH, and**   )
**WENDY H. SMITH,**                       )
                                          )
          **Defendants.**            )
_____  )

## ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 23)

**August 28, 2019**

Aegis Security Insurance Company ("Plaintiff") filed this action asserting several claims against M.E. Smith, Inc. ("M.E. Smith") and Mark E. Smith and Wendy H. Smith ("Defendants") in connection with its issuance of surety bonds to M.E. Smith and an indemnity agreement with Defendants. Plaintiff now moves for summary judgment. (Docket No. 23). For the reasons stated below, Plaintiff's motion is **_granted_**.

## Background

Defendants failed to submit "a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Local Rule 56.1. Therefore, because "Defendants interposed no objection to [Aegis's] Statement of Material Facts[,] . . . [it] is deemed admitted as true in its entirety." *Fid. & Guar. Ins.*, 2010 WL 4183879, at \*3; *see also Stonkus v. City of Brockton Sch. Dep't*, 322 F.3d 97, 102 (1st Cir. 2003) (citing Local Rule 56.1 and deeming

admitted material facts that the nonmovant failed to controvert); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996) ("Appellants' failure to provide a separate statement of disputed facts resulted in the district court's taking of Appellees' statement of uncontested facts as admitted.").

On or about November 9, 2015, the Defendants executed an Indemnity Agreement in favor of Plaintiff to induce Plaintiff to issue surety bonds to M.E. Smith. Pursuant to the Indemnity Agreement,

> The principal and Indemnitors shall exonerate, hold harmless, indemnify and keep indemnified the Surety from and against any and all claims, demands and liability for losses, costs, damages, and expenses of whatsoever kind or nature, (including but not limited to interest, court costs, counsel fees, and/or investigative costs), and from and against any and all other such losses and expenses which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of Bonds; (ii) by reason of the failure of the Principal or any one or more of the Indemnitors to perform or comply with any of the covenants, terms, or conditions of this Agreement; (iii) in enforcing any of the covenants or terms of this Agreement; (iv) in making any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover losses, expenses, or unpaid Bond premium in connection with any Bond; or (v) in prosecuting or defending any action or claim in connection with any Bond, whether the Surety, at its sole option, elects to employ its own counsel or permits or requires the Principal to make arrangements for the Surety's legal representation.

Docket No. 25-2 ¶ 3(a). The Indemnity Agreement further provides:

> In the event of any payment by the Surety, the Principal and Indemnitors further agree that in any accounting between the Surety and the Principal and Indemnitors, or any one or more of them, the Surety shall be entitled to reimbursement for any and all payments, disbursements and advances made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and that any vouchers, affidavits, or other evidence of any such payments made by the Surety shall be prima facie evidence of the propriety and fact of any payment and amount of the liability therefore to the Surety. In addition to the payments to be made to the Surety as set forth above, the Principal and Indemnitors agree to pay the Surety expenses (including but not limited to, court costs and counsel fees) and interest on all disbursements made by Surety as a consequence of the execution of one or more Bonds, at the rate of two percent above the then prime

rate of interest . . . as calculated from either the date of issuance by the Surety of the Bond, or from the date of each disbursement by the Surety, at the sole discretion of the Surety.

*Id.* ¶ 3(c).

In reliance on this agreement, Plaintiff issued payment and performance surety bonds to M.E. Smith guaranteeing its performance in connection with multiple construction projects. Thereafter, Plaintiff received claims on the bonds from M.E. Smith's subcontractors and material furnishers alleging that they were not fully paid for materials and services. (Docket No. 24 ¶ 12).[1]

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325). Once the moving party shows the

---

[1] M.E. Smith has filed for bankruptcy and the claims against it are consequently stayed pending resolution its bankruptcy petition. *See* 11 U.S.C. § 362.

absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must 'view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (quoting *Barbour v. Dynamics Research Corp.* 63 F.3d 32, 36 (1st Cir. 1995)).

## Discussion

### 1. Choice of Law

A federal court sitting in diversity applies the substantive law of the forum state, including that forum's choice-of-law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Where the parties contractually agree to which forum's laws govern, however, "a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir. 1991). The Court will do so here. Accordingly, the Court will proceed to assess Plaintiff's claims under Pennsylvania law. *See* Docket No. 25-2 ¶ 21 ("This Agreement shall be subject to and construed under the laws of the Commonwealth of Pennsylvania . . . .").

### 2. Application of Pennsylvania Law

Under Pennsylvania law, "a surety agreement is a contract and its language determines the surety's rights and liabilities." *Board of Trustees, Roofers Loc. No. 30 Combined Welfare Fund v. Int'l Fidelity Ins. Co.*, 63 F. Supp. 3d 459, 465 (E.D. Penn. 2014) (citing *Beckwith Machinery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 890 A.2d 403, 406 (Pa. Super. Ct. 2005)). Accordingly, "[t]he primary determinants of a surety's liability are the intent and meaning of the bond

instrument. A written contract that is clear and unambiguous may be interpreted by the court as a matter of law." *Id.* (citation omitted).

The indemnity agreement in this case contains a *prima facie* evidence clause, *see* Docket No. 25-2 ¶ 3(c), which are typically enforced by courts. *See, e.g.*, *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, 2008 WL 1931004, at *4 (E.D. Penn. 2008) (applying Pennsylvania law and enforcing *prima facie* clause). "Under a *prima facie* evidence clause, once a surety has submitted the required documentation of payments, the burden shifts, under Federal Rule of Civil Procedure 56, to the principal to prove the existence of a genuine issue of material fact." *Id.* Because the parties were bound by a "good faith" standard, *see* Docket No. 25-2 ¶ 3(c), Defendants must demonstrate bad faith or fraud by Plaintiff in order to avoid payment. *Int'l Fidelity*, 2008 WL 1931004, at *4; *see also Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 129 (3d Cir. 1997) ("[W]hat an indemnitor must demonstrate to escape liability . . . depends on the precise language used in the agreement.").

Plaintiff has proffered evidence of its losses, namely itemized statements of each payment that are sworn to in a declaration by Jo Ann Kerwin, a claims specialist. *See* Kerwin Aff.; Docket No. 25-3. Thus, Plaintiff has met the *prima facie* standard. The burden consequently shifts to Defendants to proffer evidence of a genuine issue of material fact regarding their liability to Plaintiff.

In short, Defendants have failed to do so. Defendants only argue that Plaintiff has not provided evidence substantiating amounts owed and that pending payments might not become due. *See* Docket No. 36, at 2-3. First, as noted above, the evidence proffered is enough to meet the *prima facie* standard. Regarding the pending claims, the agreement contains a collateral security provision, which provides that Plaintiff is entitled to collateral security sufficient to cover its

potential liability. *See* Docket No. 25-2 ¶ 3(b).  Accordingly, this argument also fails. *Cf. Am. Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F. Supp. 437, 440 (S.D.N.Y. 1997) ("Defendant's characterization of the practical effect of the Indemnity Agreement is entirely accurate.  Indeed, the very purpose of the Agreement is to provide plaintiff with collateral security *before* it is required to discharge any potential . . . liability.").

## Conclusion

For the reasons stated above, Plaintiff's motion (Docket No. 23) is ***granted***.  Accordingly, it is ordered:

1. Defendants shall indemnity Plaintiff in the amount of $503,614.65 for losses incurred plus 6.7 percent interest from May 1, 2018.[2]

2. Defendants shall post collateral with Plaintiff in the amount of $58,513.93 for Plaintiff's pending claims.

**SO ORDERED**

> */s/ Timothy S. Hillman*
> **TIMOTHY S. HILLMAN**
> **DISTRICT JUDGE**

---

[2] Plaintiff requests this Court assess interest at 6.7 percent per annum calculated from May 1, 2018. *See, e.g.*, Docket No. 25, at 5.  Pursuant to the agreement, Plaintiff is entitled to assess interest at two percent above the then prime rate "as calculated from either the date of issuance by [Plaintiff] of the Bond, or from the date of each disbursement by [Plaintiff], at the sole discretion of [Plaintiff]." Docket No. 25-2 ¶ 3(c). On April 2, 2018, Plaintiff disbursed $135,000 to Xylem Dewatering. Kerwin Aff. ¶ 18 n.1. At that time, the prime interest rate was 4.75%. *Id.*